UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CABARDO, DONNABEL SUYAT, MACTABE BIBAT, MARISSA BIBAT, ALICIA BOLLING, RENATO MANIPON, CARLINA CABACONGAN, and JOHN DAVE CABACONGAN, on behalf of all current and former employees and the State of California<br><br>Plaintiffs,<br><br>v.<br><br>MARILYN PATACSIL and ERNESTO PATACSIL,<br><br>Defendants. | No. 2:12-cv-01705-TLN-KJN<br><br>**ORDER** |

This is a lawsuit asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and several California wage-and-hour laws. The matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment.[1] (ECF No. 44.) Defendants Marilyn Patacsil ("Marilyn") and Ernesto Patacsil (collectively "Defendants") oppose the motion. (ECF No. 49.) For the reasons set forth below, Plaintiffs' motion is GRANTED in part.

---

[1] Plaintiffs are Joseph Cabardo, Donnabel Suyat, Mactabe Bibat, Marissa Bibat, Alicia Bolling, Renato Manipon, Carlina Cabacongan, and John Dave Cabacongan. (First Am. Compl., ECF No. 21.) Plaintiffs filed this lawsuit as a putative class action, but Plaintiffs have not filed a motion for class certification and the deadline to seek certification has long since passed. (*See* Min. Order, ECF No. 41.)

1

**I.     BACKGROUND**

Plaintiffs are former employees of Patacsil Care Homes, a group of residential care homes owned and operated by Defendants. Plaintiffs were "live-in" caregivers at the homes, which, as the name suggests, means they lived and worked onsite.

The gravamen of Plaintiffs' complaint is straightforward: they contend that Defendants misclassified them as exempt from minimum wage and overtime requirements under both federal and California law. (ECF No. 21 at ¶ 26–28.) Plaintiffs brought a suite of claims in this lawsuit—alleging that Defendants violated several federal and state wage-and-hour laws for conduct like not paying Plaintiffs minimum wage or overtime, not providing meal periods or rest periods, not providing accurate and itemized wage statements, and not maintaining time records showing when Plaintiffs began and ended work or meal periods. (ECF No. 21 at ¶ 27.)

The instant motion concerns only Plaintiffs' sixth and tenth claims. In their sixth claim, Plaintiffs contend that Defendants violated § 226 of the California Labor Code because Defendants did not provide Plaintiffs with wage statements accurately reflecting the number of hours Plaintiffs worked. (ECF No. 44-1 at 1:12–15.) In their tenth claim, Plaintiffs contend that Defendants' violation of § 226 is also a predicate that allows them to recover civil penalties pursuant to the Labor Code Private Attorneys General Act ("PAGA"), CAL. LAB. CODE §§ 2698 *et seq.* (ECF No. 44-1 at 1:26–28.) Plaintiffs argue they are entitled to summary judgment on both claims.

The relevant facts are not in dispute. Prior to 2012, Defendants paid Plaintiffs a salary rather than an hourly wage. (Sutton Decl., Ex. 1 ("Patacsil Dep. 1"), ECF No. 44-4 at 55:13–15.) Consequently, Defendants did not provide Plaintiffs with wage statements that recounted the hours Plaintiffs worked in any given pay period. (Sutton Decl., Ex. 2 ("Patacsil Dep. 2"), ECF No. 44-5 at 28:24–29:1.) Marilyn conceded the point in her depositions:

> Q: Okay. And so [the] wage statements that [Plaintiffs] got didn't contain any reference to hours worked?
>
> A: No.

(Patacsil Dep. 1, ECF No. 44-4 at 55:16–18.)

> Q: Okay. So the wage statements that you gave [Plaintiffs], did they record the hours?
>
> A: No, it's because it's salary.
>
> Q: So there was no recounting of hours on the wage statements?
>
> A: No.

(Patacsil Dep. 2, ECF No. 44-5 at 28:24–29:4.) Most of the wage statements Plaintiffs received simply had no reference to hours worked. (ECF No. 44-2 at No. 5.) Others listed "86.67" hours regardless of the Plaintiff or pay period. (ECF No. 44-2 at No. 5.) Defendants do not contend that any of these were accurate. Instead, they attribute the "86.67" hour entries to a bank error. (ECF No. 49 at 6:9–10.)

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When the Court looks at the evidence presented by the parties, it must credit the non-moving party's evidence and draw all justifiable inferences in the non-moving party's favor. *Id.* at 255. But inferences are not drawn out of the air. It is the non-moving party's obligation to produce a factual predicate from which the inference may be drawn. *Mayweathers v. Terhune*, 328 F. Supp. 2d 1086, 1092–93 (E.D. Cal. 2004).

When the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could do anything but find in its favor. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party carries its initial burden, the burden then shifts to the non-moving party, who "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The non-moving party cannot merely rely upon the pleadings. *Estate of Tucker ex rel. Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008). Instead, it must

3

produce evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.*

In resolving the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotations omitted).

**III.   DISCUSSION**

Plaintiffs move for summary judgment on their sixth claim (for violating Labor Code § 226) and tenth claim (for civil penalties pursuant to PAGA). The Court addresses those claims in turn.

A. Sixth Claim: California Labor Code § 226

California Labor Code § 226 requires employers to provide their employees with "an accurate itemized statement in writing showing" nine critical payroll elements. CAL. LAB. CODE § 226(a). Employers must provide these wage statements either "semimonthly or at the time of each payment of wages." *Id.* Section 226 also creates a cause of action for employees whose employers do not provide adequate wage statements. *Id.* at § 226(e). To recover, a plaintiff must show three elements: "(1) a violation of [§] 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015) (quoting *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014)).

        i.    *Violation of § 226(a)*

Plaintiffs must first establish that Defendants violated § 226(a). Plaintiffs contend that Defendants violated § 226(a)(2) in particular. (*See* ECF No. 44-1 at 7:1–3.) Section 226(a)(2) requires wage statements list the "total hours worked by the employee," unless the employee is exempt from minimum wage and overtime requirements. CAL. LAB. CODE. § 226(a)(2); *id.* at § 226(j). Thus, whether Defendants violated § 226(a)(2) turns on two issues: (1) whether Plaintiffs were exempt from minimum wage and overtime requirements and (2), if they were not, whether Defendants provided inadequate wage statements.

///

4

a. <u>Exemption from Minimum Wage and Overtime Requirements</u>

The threshold question is whether Plaintiffs were exempt from minimum wage and overtime requirements. Section 226(a)(2) does not require wage statements showing the total hours an employee worked if "the employee is exempt from the payment of minimum wage and overtime under . . . [t]he exemption for persons employed in an executive, administrative, or professional capacity provided in any applicable order of the Industrial Welfare Commission." CAL. LAB. CODE § 226(j)(2)(A).

The Industrial Welfare Commission ("IWC") is the state agency empowered to formulate regulations (known as wage orders) governing employment in California. *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 667 n.3 (2014); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 795 (1999). Although the IWC was defunded in 2004, its wage orders remain in effect. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1102 n.4 (2007). The IWC has issued wage orders covering sixteen specific industries and occupations. *See* CAL. CODE REGS. tit. 8, §§ 11010–11160; *see also Martinez v. Combs*, 49 Cal. 4th 35, 57 (2010).

Wage Order 5–2001 is relevant here. Wage Order 5–2001 regulates wages, hours, and working conditions in the public housekeeping industry—a category that includes care homes like those operated by Defendants. CAL. CODE REGS. tit. 8, § 11050(1); *id.* at § 11050(2)(P)(4). Like all industry-specific wage orders, Wage Order 5–2001 exempts from minimum wage and overtime requirements employees in executive, administrative, or professional roles. *Id.* at § 11050(1)(B); *see also Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 373 (2014).

Wage Order 5–2001 sets out specific criteria that would qualify an employee for each of the three exemption categories. For example, to qualify for the executive exemption, the employee must (1) have duties and responsibilities involving the management of the enterprise; (2) customarily and regularly direct the work of other employees; (3) have authority or influence over hiring and firing; (4) regularly exercise discretion and independent judgment; (5) primarily have duties like those set forth in the FLSA regulations, such as establishing employee pay and work schedules or handling employee grievances; and (6) earn a monthly salary equivalent to at

5

1   least twice the minimum wage. CAL. CODE. REGS. tit. 8, § 11050(1)(B)(1). Similarly, to qualify
2   for the administrative exemption, the employee must (1) have duties and responsibilities directly
3   related to his or her employer's management policies or general business operations, (2)
4   customarily and regular exercise discretion and independent judgment, (3) regularly and directly
5   assist someone in a bona fide executive or administrative capacity, (4) perform work along
6   specialized or technical lines under only general supervision, (5) execute under only general
7   supervision special assignments and tasks, (6) primarily have duties like those set forth in the
8   FLSA regulations, such as purchasing and procurement, and (7) earn a monthly salary equivalent
9   to at least twice the minimum wage. *Id.* at § 11050(1)(B)(2). Finally, to qualify for the
10  professional exemption, the employee must, among other things, be licensed by the State of
11  California and primarily engaged in law, medicine, dentistry, optometry, architecture,
12  engineering, teaching, accounting, or an occupation "commonly recognized as a learned or artistic
13  profession." *Id.* at § 11050(1)(B)(3). In each case, the title or description of a particular job is
14  not dispositive. *See Ramirez*, 20 Cal. 4th at 802 (reasoning that if an employee's eligibility for an
15  exemption "were determined through an employer's job description, then the employer could
16  make the employee exempt from overtime laws solely by fashioning an idealized job description
17  that had little basis in reality").

18   Defendants argue that summary judgment is improper because there is a triable issue of
19  fact regarding whether Plaintiffs were exempt as executive, administrative, or professional
20  employees. (ECF No. 49 at 9:25–10:13.) That argument is at odds with both California wage-
21  and-hour law and summary judgment practice.

22   In California, the assertion of an exemption is an affirmative defense and the employer
23  bears the burden of proving the employee is exempt. *Ramirez*, 20 Cal. 4th at 794–95. Because
24  Defendants bear the burden of proof at trial on this issue, Plaintiffs can carry their burden at the
25  summary judgment stage by showing, through argument, that Defendants do not have enough
26  evidence to establish the applicability of an exemption. *See Coomes v. Edmonds Sch. Dist. No.*
27  *15*, 816 F.3d 1255, 1261 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210
28  F.3d 1099, 1102 (9th Cir. 2000)). If Plaintiffs carry their initial burden, Defendants must produce

some evidence to support their defense. *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (citing *Nissan Fire*, 210 F.3d at 1103). If Defendants cannot, there is no need for trial on the issue. *Nissan Fire*, 210 F.3d at 1103.

Here, Plaintiffs assert that there are no facts in the record supporting the affirmative defense that Plaintiffs were exempt. According to Plaintiffs, "[a] review of the factors that make any one of the exemptions applicable confirms that none of [the] exemptions apply [here]." (ECF No. 44-1 at 6:19–21.) Plaintiffs argue "Defendants will not be able to avail themselves of the defense that Plaintiffs were exempt employees." (ECF No. 44-1 at 6:22–24.) Plaintiffs also point out that Marilyn conceded in her deposition that Plaintiffs were not exempt. (ECF No. 44-1 at 6:21–23.) Although the applicability of an exemption is a legal conclusion about which Marilyn is not the final authority, her admission underscores the paucity of record evidence supporting any exemption here. Thus, Plaintiffs have "show[n], through argument," that Defendants do not have enough evidence to establish their affirmative defense—and Defendants bear the burden "to designate specific facts demonstrating the existence of genuine issues for trial." *Coomes*, 816 F.3d at 1261.

Defendants have not done so. Defendants proffer a series of employer–employee agreements designating Plaintiffs as managers or assistant managers. (ECF No. 49 at 10:2–5.) According to Defendants, these agreements create a genuine issue of material fact regarding whether Plaintiffs were exempt. (ECF No. 49 at 10:2–5.) But Defendants' offerings suffer a critical defect: they are irrelevant to the ultimate issue.[2] An employer cannot simply render an employee exempt on the employer's own say-so. *See Ramirez*, 20 Cal. 4th at 802. Defendants have not come forward with any evidence about Plaintiffs' actual job duties—they have simply asserted that calling someone a manager or assistant manager and paying that person a salary may make them exempt. (ECF No. 49 at 10:2–5.) Under California law, Defendants are wrong. *See Ramirez*, 20 Cal. 4th at 802. Without more, Defendants have not carried their burden on this

---

[2] In addition, Plaintiffs have lodged evidentiary objections to each employer–employee agreement, arguing that the agreements are unauthenticated and lack foundation. (Pls.' Objs. to Evid., ECF No. 60 at 7:7–11:12.) Leaving aside the questionable helpfulness of such objections, *see Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120–21 (E.D. Cal. 2006), the Court need not resolve the issue at this juncture because the agreements are not relevant and do not create a genuine dispute regarding any *material* fact for the reasons set forth herein.

1 point. Accordingly, the Court concludes that Plaintiffs were not exempt and Defendants were
2 required to issue wage statements that, pursuant to § 226(a)(2), showed the total hours Plaintiffs
3 worked.

          b. <u>Inadequate Wage Statements</u>

5       Section 226(a)(2) requires employers to provide their employees with "accurate itemized
6 statement[s] in writing showing . . . total hours worked by the employee." CAL. LAB. CODE
7 § 226(a)(2). Here, there is no genuine dispute that Defendants did not provide Plaintiffs with
8 wage statements showing the hours Plaintiffs worked. (*See* Patascil Dep. 1, ECF No. 44-4 at
9 55:16–18; Patacsil Dep. 2, ECF No. 44-5 at 28:24–29:4.) Most of the wage statements Plaintiffs
10 received simply had no reference to hours worked. (ECF No. 44-2 at No. 5.) Others listed
11 "86.67" hours regardless of the Plaintiff or pay period. (ECF No. 44-2 at No. 5.) Defendants do
12 not contend that any of these were accurate. (ECF No. 49 at 10:16–17.) In their opposition
13 papers, Defendants assert that they "did issue wage statements to Plaintiffs." (ECF No. 50 at No.
14 2.) But to defeat summary judgment, Defendants must point to some evidence that they issued
15 wage statements *showing the hours Plaintiffs worked*. Defendants have not done so.
16 Accordingly, the Court concludes Plaintiffs have established that Defendants violated § 226(a)(2).

17          *ii.*    *Knowing and Intentional*

18      Plaintiffs must also establish that Defendants' violation of § 226(a) was "knowing and
19 intentional." CAL. LAB. CODE § 226(e)(1). "Section 226 is not a strict liability statute—'the
20 phrase "knowing and intentional" in [§] 226(e)(1) must be read to require something more than a
21 violation of [§] 226(a) alone.'" *Garnett*, 139 F. Supp. 3d at 1133 (quoting *Willner*, 35 F. Supp.
22 3d at 1130–31). For example, "an isolated and unintentional payroll error due to a clerical or
23 inadvertent mistake" is not a knowing and intentional violation of § 226(a). CAL. LAB. CODE
24 § 226(e)(3).

25      To establish that Defendants' violation of § 226(a) was "knowing and intentional,"
26 Plaintiffs must demonstrate that Defendants were "aware of the factual predicate underlying the
27 violation[s]." *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1028 (E.D. Cal. 2015).
28 However, Plaintiffs are not required to demonstrate that Defendants knew their conduct was

1 unlawful. *Id.* at 1027–28; *Garnett*, 139 F. Supp. 3d at 1133 (citing *Willner*, 35 F. Supp. 3d at 1131).

3 Defendants urge the Court to apply a good faith defense. (ECF No. 49 at 10:14–14:6.) As Defendants point out, some courts have held that an employer may lack the necessary knowledge and intent for liability under § 226(e) if the employer had a good-faith belief that its employees were exempt from § 226. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1308–09 (C.D. Cal. 2015); *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1146 (N.D. Cal. 2009). Defendants also emphasize their good-faith efforts to keep Plaintiffs apprised of the hours they worked—albeit not through Plaintiffs' wage statements—and to comply with other laws concerning live-in caregivers. (ECF No. 49 at 10:14–12:24.)

11 But the Court declines to recognize the good faith defense. The prevailing view in this district is that a good-faith misclassification does not excuse a violation of § 226(a). *See Garnett*, 139 F. Supp. 3d at 1133 ("To the extent that some district courts have found that an employer can lack the necessary knowledge and intent if it had a good faith belief that its employee was exempt from [§] 226, this court disagrees."); *see also Novoa*, 100 F. Supp. 3d at 1029. This district is not alone in that view. *See, e.g.*, *Bernstein v. Virgin Am., Inc.*, No. 15-cv-02277-JST, 2017 WL 57307, *18 (N.D. Cal. Jan. 5, 2017) ("Good faith is not a defense to a wage statement violation under § 226."); *Willner*, 35 F. Supp. 3d at 1131. Moreover, the good faith defense "stands contrary to the often repeated legal maxim: 'ignorance of the law will not excuse any person, either civilly or criminally.'" *Novoa*, 100 F. Supp. 3d at 1028 (quoting *Jerman v. Carlisle McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010)). Finally, the good-faith defense is not consistent with the text of § 226(e) itself. For example, § 226(e)(3) instructs the factfinder, when evaluating whether a particular violation was knowing and intentional, to consider "whether the employer . . . has adopted and is in compliance with a set of policies, procedures, and practices that fully comply" with § 226. CAL. LAB. CODE § 266(e)(3). But that would be irrelevant "[i]f an employer's belief that it [wa]s in compliance with [§] 226(a) were adequate to render any violation not knowing and not intentional." *Garnett*, 139 F. Supp. 3d at 1134 (quoting *Novoa*, 100 F. Supp. 3d at 1028) (some alterations in original).

Here, Defendants knew they were not providing Plaintiffs with wage statements recounting the hours Plaintiffs worked. (Patacsil Dep. 1, ECF No. 44-4 at 55:16–18; Patacsil Dep. 2, ECF No. 44-5 at 28:24–29:4.) Marilyn explained that Plaintiffs' wage statements did not recount hours because Plaintiffs were paid on a salary basis. (Patacsil Dep. 2, ECF No. 44-5 at 28:24–29:1.) The omission was not due to an accident, clerical error, or inadvertent mistake—it was Defendants' policy. To the extent Defendants argue that there is a need for trial concerning whether they knowingly and intentionally violated § 226 by providing some paychecks recounting 86.67 hours worked, the Court disagrees. Defendants suggest that the 86.67-hour entries were due to a bank error, thus those entries were not knowingly and intentionally caused by Defendants. (ECF No. 50 at No. 5.) Yet by Defendants' own admission, but for the bank error, the wage statements would have been entirely silent as to hours. Thus, the Court concludes that Defendants' violations of § 226(a) were knowing and intentional.

### iii. Injury

Finally, Plaintiffs must demonstrate that they were injured by Defendants' violation of § 226(a). *Willner*, 35 F. Supp. 3d at 1128. Plaintiffs do not point to specific instances when they were injured by the deficient wage statements they received. (*See* ECF No. 44-1 at 11:4–12:16.) Instead, Plaintiffs contend that a 2013 amendment to § 226 makes it unnecessary for them to do so. (ECF No. 44-1 at 11:28–12:16.)

Effective January 1, 2013, § 226(e) was amended to clarify when an employee is deemed to have suffered an injury for purposes of § 226. *See* Act effective Jan. 1, 2013, ch. 843, 2012 Cal. Stat. 6619 (2012); *see also Novoa*, 100 F. Supp. 3d at 1029 (discussing the amendment). "That amendment explained that the employee suffers injury when an employer fails to provide accurate and complete information as required by [§ 226(a)] . . . ." *Novoa*, 100 F. Supp. 3d at 1029. Specifically, § 226(e)(2)(B) now provides that "[a]n employee is deemed to suffer injury . . . if the employer fails to provide accurate and complete information as required by . . . [§ 226(a)] and the employee cannot promptly and easily determine from the wage statement alone" the information that § 226(a) requires the employer to provide. CAL. LAB. CODE § 226(e)(2)(B); *see also Garnett*, 139 F. Supp. 3d at 1131. Promptly and easily means "a

reasonable person would be able to readily ascertain the information without reference to other documents or information." CAL. LAB. CODE § 226(e)(2)(C).

Plaintiffs argue they have shown the requisite injury because the 2013 amendment controls here even though the relevant violations all occurred prior to 2013. According to Plaintiffs, because their wage statements were silent or inaccurate as to hours, "there is no way" they could "promptly and easily determine from the wage statement[s] alone" their total hours worked. (ECF No. 44-1 at 12:9–16.)

In response, Defendants assert that "the deprivation of [required] information, standing alone, is not a cognizable injury." (ECF No. 49 at 14:9–24 (quoting *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142–43 (2011).) They rely on several cases that predate the 2013 amendment. (ECF No. 49 at 14:9–24 (citing *Price*, 192 Cal. App. 4th at 1142–43; *Ricaldi v. U.S. Investigations Services, LLC*, 878 F. Supp. 2d 1038, 1046 (C.D. Cal. 2012); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1135 (C.D. Cal. 2011); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 517 (N.D. Cal. 2008)).)[3] Although Defendants do not argue the point outright, the Court understands them to dispute whether the 2013 amendment applies here.

"Determining whether the 2013 [a]mendment applies here requires the Court to answer two questions: '(1) Did the amendment . . .change or merely clarify the law? [and] (2) if the amendment did change the law, does the change apply retroactively?'" *Brewer v. General Nutrition Corp.*, No. 11-CV-3587 YGR, 2015 WL 5072039, at *8 (N.D. Cal. Aug. 27, 2015) (quoting *McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 472 (2004)) (some alterations in original). If the 2013 amendment merely clarified the law, it will apply here without presenting an issue of retroactivity "because the true meaning of the statute remains the same." *McClung*, 34 Cal. 4th at 471; s*ee also Ortland v. Cty. of Tehama*, 939 F. Supp. 1465, 1471–72 (E.D. Cal. 1996)

---

[3] Defendants also cite three cases that were decided after the 2013 amendment became effective, but none of them are instructive. In *Loeza v. JP Morgan Chase Bank*, the court did not resolve the injury issue because it could not determine whether § 226(a) had been violated in the first instance. *Loeza v. JP Morgan Chase Bank*, No. 13-cv-95-L (BGS), 2014 WL 4912730, at *6 (S.D. Cal. Sept. 30, 2014). In *Telles v. Li*, the court did not "reach the issue of whether the 2013 amendments" applied to pre-2013 violations because it concluded the plaintiffs stated a claim under either the pre- or post-amendment versions of § 226(e). *Telles v. Li*, No. 5:11-CV-01470-LHK, 2013 WL 5199811, at *8 (N.D. Cal. Sept. 16, 2013). Finally, *Derum v. Saks & Co.* simply applied the 2013 amendment to violations that occurred in 2014. *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1229–30 (S.D. Cal. 2015).

("[T]here are two types of legislation where the rule against retroactive legislation is inapplicable. The first is where the statute is an amendment that clarifies existing law.")

The prevailing view is that the 2013 amendment merely clarified the injury requirement, rather than propounding a "substantive shift" in the law. *Brewer*, 2015 WL 5072039 at *9 (collecting cases). In *Brewer*, the court held that the 2013 amendment applied to violations that predated the amendment's enactment because the amendment "clarified existing law and did not substantially change the legal consequences of past actions, or upset expectations based on prior law." *Id.* Other courts have similarly concluded that the 2013 amendment merely clarified the law. *See, e.g.*, *Boyd*, 109 F. Supp. 3d at 1308 ("[T]he amendment simply codified the established law that an employee who 'cannot promptly and easily determine from the wage statement alone' requirements under § 226(a) has suffered an injury."); *Novoa*, 100 F. Supp. 3d at 1029 ("The Court would note that the 2013 Amendment does not represent a substantive shift in [§] 226 . . . . Rather, the 2013 Amendment is best understood as clarifying that the [§] 226 injury requirement hinges on whether an employee can 'promptly and easily' determine from the wage statement, standing alone, the information needed to know whether he or she is being underpaid."). The Court follows suit, concluding that the 2013 amendment clarified existing law and applying it in the instant case.

Here, Plaintiffs received wage statements that were either silent as to hours, or undisputedly inaccurate. Consequently, they have shown the requisite injury because—due to the deficient wage statements they received—they could not "promptly and easily determine from the wage statement alone" the hours they worked as required by § 226(a). CAL. LAB. CODE § 226(e)(2)(B). The Court concludes that Plaintiffs have satisfied the injury requirement.

      *iv. Damages*

For violations of § 226, the employee may recover the greater of his or her actual damages or a statutory penalty. CAL. LAB. CODE § 226(e)(1). If the employee seeks a statutory penalty, the amount is fixed by § 226(e)(1) at "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period." *Id.* If the employee seeks a statutory penalty, he or she may recover an amount "not

1  to exceed an aggregate penalty of four thousand dollars ($4,000)." *Id.* Employees are also
2  "entitled to an award of costs and reasonable attorney's fees." *Id.*

3  Plaintiffs seek penalties rather than actual damages. (*See* ECF No. 44-1 at 13:1–25.) But,
4  with the exception of Plaintiff Alicia Bolling, they have not shown that they are entitled to the
5  penalties they seek. Plaintiffs have not submitted evidence that would allow the Court to
6  calculate their entitlement to statutory penalties because they have not shown the number of pay
7  periods in which violations occurred. It is undisputed that Defendants paid Plaintiffs and other
8  live-in caregivers on a bi-monthly basis. (ECF No. 44-2 at No. 11; ECF No. 50 at No. 11.) But
9  in their statement of undisputed material facts, Plaintiffs provide only the date ranges of their
10 employment—with no reference to when a particular pay period started or ended. (ECF No. 44-2
11 at Nos. 11–18.) To the extent that the missing information is buried in the record, it is the moving
12 party's obligation to provide it. *See* Fed. R. Civ. P. 56(c)(3).

13 Plaintiff Alicia Bolling is the exception. It is undisputed that Plaintiff Alicia Bolling
14 worked as a live-in caregiver at Patacsil Care Homes from October 8, 2011 to December 29,
15 2011. (ECF No. 44-2 at No. 11; ECF No. 50 at No. 11.) It is also undisputed that the dates of her
16 employment span six pay periods. (ECF No. 44-2 at No. 11; ECF No. 50 at No. 11.) She is
17 therefore entitled to $50 for the first pay period and $100 for the subsequent five pay periods, for
18 an aggregate penalty of $550. CAL. LAB. CODE § 226(e)(1).

19  B.  <u>Tenth Claim: PAGA</u>

20 Plaintiffs also move for summary judgment on their tenth cause of action, seeking civil
21 penalties pursuant to PAGA.

22 A PAGA action is a species of *qui tam* action. *Iskanian v. CLS Transp. L.A., LLC*, 59
23 Cal. 4th 348, 382 (2014). PAGA allows an aggrieved employee to "bring a civil action
24 personally and on behalf of other current and former employees to recover civil penalties for
25 Labor Code violations."[4] *Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009). Specifically, PAGA
26 provides that "any provision of [the Labor Code] that provides for a civil penalty to be assessed

---

[4] PAGA imposes certain procedural requirements which the parties agree Plaintiffs have satisfied. (ECF No. 50 at No. 9.) Accordingly, the Court does not discuss those requirements here.

and collected by the Labor and Workforce Development Agency . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee." CAL. LAB. CODE § 2699(a). PAGA also establishes a gap-filling civil penalty for those provisions of the Labor Code that do not already have an associated civil penalty. CAL. LAB. CODE § 2699(f). "The civil penalties recovered on behalf of the state under . . . PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." *Iskanian*, 59 Cal. 4th at 381. When an aggrieved employee successfully recovers civil penalties under PAGA, 75 percent goes to the Labor and Workforce Development Agency and 25 percent remains for the aggrieved employee (or employees). *Arias*, 46 Cal. 4th at 980–81.

Here, Plaintiffs can recover both the statutory penalties set forth in § 226(e) and civil penalties pursuant to PAGA. *See Stoddart v. Express Servs., Inc.*, No. 2:12-cv-01054-KJM-CKD, 2015 WL 5522142, at *9 (E.D. Cal. Sept. 16, 2015) ("Labor Code [§] 226(e) provides for statutory penalties, not the civil penalties recoverable on behalf of the State."). But Plaintiffs have not specified the amount they are seeking in civil penalties. (*See* ECF No. 44-1 at 13:26–14:26.) Consequently, the Court concludes that Plaintiffs are entitled to recover civil penalties in an as-yet uncertain amount.

### IV. CONCLUSION

For the foregoing reasons, the following is hereby ORDERED:

1. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 44) is GRANTED in part.
2. Plaintiff Alicia Bolling is entitled to $550 in statutory penalties.
3. Plaintiffs are entitled to collect civil penalties pursuant to PAGA.
4. Plaintiffs may seek attorney's fees and costs by motion.

IT IS SO ORDERED.

Dated: March 31, 2017

Troy L. Nunley
United States District Judge