1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11  JOSEPH CABARDO, DONNABEL            No.  2:12-cv-01705-TLN-KJN
    SUYAT, MACTABE BIBAT, MARISSA
12  BIBAT, ALICIA BOLLING, RENATO
    MANIPON, CARLINA CABACONGAN,
13  and JOHN DAVE CABACONGAN, on        **FINDINGS OF FACT AND**
    behalf of all current and former employees  **CONCLUSIONS OF LAW**
14  and the State of California,

15                 Plaintiffs,

16        v.

17  MARILYN PATACSIL and ERNESTO
    PATACSIL,
18
                   Defendants.
19

20

21        On June 26, 2012, Joseph Cabardo, Donnabel Suyat, Mactabe Bibat, Marissa Bibat, Alicia

    Bolling, and Renato Manipon (collectively "Plaintiffs")[1] filed a complaint alleging violations of:
22
    the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; several California wage-and-
23
    hour laws including the Labor Code Private Attorney General Act ("PAGA"); and the California
24
    Unfair Competition Law, Cal. Bus. and Prof. Code §§ 17200 *et seq.* ("UCL").  On March 6, 2020,
25
    a jury returned a verdict for Plaintiffs awarding damages.  (ECF Nos. 211–219.)  It remains for
26

27

    ───────────────
28  [1]     "Plaintiffs" also includes Carlina Cabacongan and John Dave Cabacongan, who were
    added as plaintiffs in the March 18, 2014 First Amended Complaint.

                                      1

1  the Court to resolve the matter of PAGA civil penalties and restitution under the UCL pursuant to

2  Federal Rule of Civil Procedure 52.  The Court requested briefing by the parties on these issues.

3  (ECF Nos. 223, 227.)

4      The Court has carefully considered the parties' arguments and hereby finds, for the

5  reasons set forth below, that Defendants owe $79,524.53 in PAGA civil penalties, $43,333.16 in

6  restitution pursuant to the UCL to Marissa Bibat, and $43,333.16 in restitution to Renato

7  Manipon.

8      **I.    FINDINGS OF FACT**

9      1.    Plaintiffs filed a PAGA notice with the California Labor and Workforce

10  Development Agency ("LWDA") on May 22, 2012.  (Trial Ex. 58.)  The LWDA did not respond

11  within 33 days.  (*Id.*)

12      Alicia Bolling

13      2.    Defendants Marilyn Patacsil and Ernesto Patacsil ("Defendants") employed

14  Plaintiff Alicia Bolling from October 8, 2011 to December 29, 2011.  (ECF No. 81 at 2.)

15      3.    Defendants issued six pay stubs to Alicia Bolling from May 22, 2011 to the

16  present.  (ECF No. 218 at ¶ 1.)  These six pay stubs represent the pay periods for which Alicia

17  Bolling was employed and paid.  (*See id.*)

18      4.    Defendants did not pay Alicia Bolling the California minimum wage of eight

19  dollars per hour for these pay periods.  (*Id.* at ¶¶ 9–10.)

20      5.    Alicia Bolling worked overtime hours during these pay periods.  (*Id.* at ¶¶ 13–14.)

21  Defendants failed to pay her overtime compensation for these pay periods.  (*Id.* at ¶ 15.)

22      6.    Alicia Bolling worked double-time hours during these pay periods.  (*Id.* at ¶¶ 17–

23  18.)  Defendants failed to pay her double-time compensation for these pay periods.  (*Id.* at ¶ 19.)

24      7.    Defendants did not provide Alicia Bolling with a reasonable opportunity to take

25  one 30-minute meal break for every shift of five hours or more during these pay periods.  (*Id.* at

26  ¶¶ 28–29.)

27  ///

28  ///

2

8.      Defendants did not provide Alicia Bolling with a reasonable opportunity to take one 10-minute rest break for every shift of six hours or two 10-minute rest breaks for shifts over six hours during these pay periods.  (*Id.* at ¶¶ 31–33.)

Mactabe Bibat

9.      Defendants employed Plaintiff Mactabe Bibat from October 29, 2011 to January 12, 2012.  (ECF No. 81 at 2.)

10.      Defendants issued six pay stubs to Mactabe Bibat from May 22, 2011 to the present.  (ECF No. 214 at ¶ 1.)  These six pay stubs represent the pay periods for which Mactabe Bibat was employed and paid.  (*See id.*)

11.      Defendants did not pay Mactabe Bibat the California minimum wage of eight dollars per hour for these pay periods.  (*Id.* at ¶¶ 9–10.)

12.      Mactabe Bibat worked overtime hours during these pay periods.  (*Id.* at ¶¶ 13–14.) Defendants failed to pay him overtime compensation for these pay periods.  (*Id.* at ¶ 15.)

13.      Mactabe Bibat worked double-time hours during these pay periods.  (*Id.* at ¶¶ 17–18.)  Defendants failed to pay him double-time compensation for these pay periods.  (*Id.* at ¶ 19.)

14.      Defendants did not provide Mactabe Bibat with a reasonable opportunity to take one 30-minute meal break for every shift of five hours or more during these pay periods.  (*Id.* at ¶¶ 28–29.)

15.      Defendants did not provide Mactabe Bibat with a reasonable opportunity to take one 10-minute rest break for every shift of six hours or two 10-minute rest breaks for shifts over six hours during these pay periods.  (*Id.* at ¶¶ 31–33.)

Donnabel Suyat

16.      Defendants employed Plaintiff Donnabel Suyat from August 17, 2010 to March 4, 2012.  (ECF No. 81 at 3, Trial Ex. 262.)

17.      Defendants issued 17 pay stubs to Donnabel Suyat from May 22, 2011 to the present.  (ECF No. 212 at ¶ 1.)  These 17 pay stubs represent the pay periods for which Donnabel Suyat was employed and paid.  (*See Id.*)

///

3

18.     Defendants did not pay Donnabel Suyat the California minimum wage of eight dollars per hour for these pay periods.  (*Id.* at ¶¶ 9–10.)

19.     Donnabel Suyat worked overtime hours during these pay periods.  (*Id.* at ¶¶ 13–14.)  Defendants failed to pay her overtime compensation for these pay periods.  (*Id.* at ¶ 15.)

20.     Donnabel Suyat worked double-time hours during these pay periods.  (*Id.* at ¶¶ 17–18.)  Defendants failed to pay her double-time compensation for these pay periods.  (*Id.* at ¶ 19.)

21.     Defendants did not provide Donnabel Suyat with a reasonable opportunity to take one 30-minute meal break for every shift of five hours or more during these pay periods.  (*Id.* at ¶¶ 28–29.)

22.     Defendants did not provide Donnabel Suyat with a reasonable opportunity to take one 10-minute rest break for every shift of six hours or two 10-minute rest breaks for shifts over six hours during these pay periods.  (*Id.* at ¶¶ 31–33.)

Joseph Cabardo

23.     Defendants employed Plaintiff Joseph Cabardo from October 6, 2011 to March 1, 2012.  (ECF No. 81 at 2)

24.     Defendants issued six pay stubs to Joseph Cabardo from May 22, 2011 to the present.  (ECF No. 211 at ¶ 1.)  These six pay stubs represent the pay periods for which Joseph Cabardo was employed and paid.  (*See Id.*)

25.     Defendants did not pay Joseph Cabardo the California minimum wage of eight dollars per hour for these pay periods.  (*Id.* at ¶¶ 9–10.)

26.     Joseph Cabardo worked overtime hours during these pay periods.  (*Id.* at ¶¶ 13–14.)  Defendants failed to pay him overtime compensation for these pay periods.  (*Id.* at ¶ 15.)

27.     Joseph Cabardo worked double-time hours during these pay periods.  (*Id.* at ¶¶ 17–18.)  Defendants failed to pay him double-time compensation for these pay periods.  (*Id.* at ¶ 19.)

28.     Defendants did not provide Joseph Cabardo with a reasonable opportunity to take one 30-minute meal break for every shift of five hours or more during these pay periods.  (*Id.* at ¶¶ 28–29.)

29.     Defendants did not provide Joseph Cabardo with a reasonable opportunity to take one 10-minute rest break for every shift of six hours or two 10-minute rest breaks for shifts over six hours during these pay periods.  (*Id.* at ¶¶ 31–33.)

Renato Manipon

30.     Defendants employed Plaintiff Renato Manipon from August 9, 2005 to January 11, 2012.  (ECF No. 81 at 3.)

31.     Defendants issued 16 pay stubs to Renato Manipon from May 22, 2011 to the present.  (ECF No. 217 at ¶ 1.)  These 16 pay stubs represent the pay periods for which Renato Manipon was employed and paid.  (*See Id.*)

32.     Defendants did not pay Renato Manipon the California minimum wage of eight dollars per hour for these pay periods.  (*Id.* at ¶¶ 9–10.)

33.     Renato Manipon worked overtime hours during these pay periods.  (*Id.* at ¶¶ 13–14.)  Defendants failed to pay him overtime compensation for these pay periods.  (*Id.* at ¶ 15.)

34.     Renato Manipon worked double-time hours during these pay periods.  (*Id.* at ¶¶ 17–18.)  Defendants failed to pay him double-time compensation for these pay periods.  (*Id.* at ¶ 19.)

35.     Defendants did not provide Renato Manipon with a reasonable opportunity to take one 30-minute meal break for every shift of five hours or more during these pay periods.  (*Id.* at ¶¶ 28–29.)

36.     Defendants did not provide Renato Manipon with a reasonable opportunity to take one 10-minute rest break for every shift of six hours or two 10-minute rest breaks for shifts over six hours during these pay periods.  (*Id.* at ¶¶ 31–33.)

37.     The evidence necessary to rule on the UCL Claim has already been introduced during the jury trial.  While the Court recognizes that the jury's factual findings do not cover the period at issue, the evidence presented at trial leads the Court to the same conclusion reached by the jury with respect to the year prior to June 26, 2009.

///

///

5

38.     From June 26, 2008 to June 26, 2009, Renato Manipon worked, on average, 13 hours per day on weekdays, four days per week and 17 hours per day on weekends, two days per week.  (*Id.* at ¶¶ 3–6.)

39.     Defendant only paid Renato Manipon $3.67 per hour he worked.  (*Id.* at ¶ 11.)

Marissa Bibat

40.     Defendants employed Plaintiff Marissa Bibat from August 2005 to January 12, 2012.  (ECF No. 81 at 2.)

41.     Defendants issued 15 pay stubs to Marissa Bibat from May 22, 2011 to the present.  (ECF No. 216 at ¶ 1.)  These 15 pay stubs represent the pay periods for which Marissa Bibat was employed and paid.  (*See Id.*)

42.     Defendants did not pay Marissa Bibat the California minimum wage of eight dollars per hour for these pay periods.  (*Id.* at ¶¶ 9–10.)

43.     Marissa Bibat worked overtime hours during these pay periods.  (*Id.* at ¶¶ 13–14.) Defendants failed to pay her overtime compensation for these pay periods.  (*Id.* at ¶ 15.)

44.     Marissa Bibat worked double-time hours during these pay periods.  (*Id.* at ¶¶ 17–18.)  Defendants failed to pay her double-time compensation for these pay periods.  (*Id.* at ¶ 19.)

45.     Defendants did not provide Marissa Bibat with a reasonable opportunity to take one 30-minute meal break for every shift of five hours or more during these pay periods.  (*Id.* at ¶¶ 28–29.)

46.     Defendants did not provide Marissa Bibat with a reasonable opportunity to take one 10-minute rest break for every shift of six hours or two 10-minute rest breaks for shifts over six hours during these pay periods.  (*Id.* at ¶¶ 31–33.)

47.     The evidence necessary to rule on the UCL Claim has already been introduced during the jury trial.  While the Court recognizes that the jury's factual findings do not cover the period at issue, the evidence presented at trial leads the Court to the same conclusion reached by the jury with respect to the year prior to June 26, 2009.

///

///

1    48.    From June 26, 2008 to June 26, 2009, Marissa Bibat worked, on average, 13 hours

2    per day on weekdays, four days per week and 17 hours per day on weekends, two days per week.

3    (*Id.* at ¶¶ 3–6.)

4    49.    Defendant only paid Marissa Bibat $3.67 per hour she worked.  (*Id.* at ¶ 11; Trial

5    Ex. 87.)[2]

6    <u>PAGA</u>

7    50.    Defendants employed 40 employees from May 22, 2011 to the present.  (ECF No.

8    219 at ¶ 1.)

9    51.    Between May 22, 2011 to the present, Defendants issued 123 wage statements that

10    were not accurate or itemized.  (*Id.* at ¶ 2.)

11    **II.    CONCLUSIONS OF LAW**

12    The jury returned verdicts for each Plaintiff deciding damages pursuant to the law.

13    However, the Court is to determine PAGA civil penalties under Cal Lab. Code § 2699(e)(1) and

14    equitable relief under the UCL.  *See Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

15    1144 (2003) (the UCL only provides for equitable remedies).  "[I]n a case where legal claims are

16    tried by a jury and equitable claims are tried by a judge, and the claims are based on the same

17    facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow

18    the jury's implicit or explicit factual determinations."  *Los Angeles Police Protective League v.*

19    *Gates*, 995 F.2d 1469, 1473 (9th Cir.1993).  The jury returned detailed special verdicts and this

20    Court is bound by those findings in coming to a determination of the PAGA penalties and UCL

21    claims.

22    ///

23    ///

24    ///

25    ///

26

27    [2]    Carlina Cabacongan and John Dave Cabacongan were not employed during the time
period at issue for PAGA civil penalties and UCL restitution.  Therefore, facts regarding these

28    Plaintiffs are irrelevant to the findings herein.

7

1

A.     PAGA

2        PAGA allows an "aggrieved employee" to file a representative action "on behalf of

3 himself or herself and other current and former employees" to recover civil penalties that could

4 otherwise be assessed and collected by the LWDA for violations of the California Labor Code.

5 Cal. Lab. Code § 2699(a). An "aggrieved employee" is any person "who was employed by the

6 alleged violator and against whom one or more alleged violations was committed." Cal. Lab.

7 Code § 2699(c). Here, Plaintiffs are all aggrieved employees under this definition.

8        Before bringing a PAGA action, a plaintiff must provide "written notice by certified mail

9 to the LWDA and the employer of the specific provisions of this code alleged to have been

10 violated, including the facts and theories to support the alleged violation." Cal. Lab. Code §

11 2699.3(a)(1). If the LWDA declines to investigate or does not provide a response within 33

12 calendar days, the aggrieved employee may commence a civil action. Cal. Lab. Code §

13 2699.3(2)(A) (August 11, 2004). Plaintiffs provided notice to the LWDA on May 22, 2012,

14 never received a response, and properly filed a PAGA action against Defendants on June 26,

15 2012. (Trial Ex. 58.)

16        The statute of limitations for PAGA claims is one year. Code Civ. Proc. § 340(a). The

17 filing of the PAGA notice with the LWDA tolls the one-year statute of limitations. *See Brown v.*

18 *Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 839 (2018), review denied (Feb. 20, 2019).

19 Therefore, Plaintiffs may bring PAGA claims for violations occurring on or after May 22, 2011.

20        Any civil penalties recovered by aggrieved employees are distributed 75 percent to the

21 LWDA and 25 percent to the aggrieved employees. Cal. Lab. Code § 2699(i).

22        Plaintiffs bring their PAGA action for violations of Cal. Lab. Code §§ 1197.1, 558, 210,

23 and 226.3.

24 ///

25 ///

26 ///

27 ///

28 ///

8

1

*i.*      *Civil Penalties under Cal. Lab. Code § 1197.1*

2     Cal. Lab. Code § 1197.7 ("§ 1197.7") imposes civil penalties on any employer who

3 willfully pays any employee less than minimum wage.  An employer is penalized:

4
> (1) For any initial violation that is intentionally committed, one
> hundred dollars ($100) for each underpaid employee for each pay
5 > period for which the employee is underpaid…

6
> (2) For each subsequent violation for the same specific offense, two
> hundred fifty dollars ($250) for each underpaid employee for each
7 > pay period for which the employee is underpaid regardless of
> whether the initial violation is intentionally committed…
8

9 Cal. Lab. Code § 1197.1(a)(1)–(2).  To determine civil penalties, the Court must first determine

10 which penalty amount applies, the initial violation or subsequent violation amount.  Based on the

11 language of the statute, an initial violation is not merely the first time an employer fails to pay

12 minimum wage, but rather a failure to pay minimum wage after the employer is cited or given

13 notice.  The $100 amount applies to "each underpaid employee for each pay period," indicating

14 that even if the employee is paid less than minimum wage on multiple occasions, the $100

15 amount can still apply.  Based on the evidence and testimony at trial, the time frame in question

16 qualifies as an "initial violation" because no citation was issued to Defendants before the filing of

17 this suit, and therefore, Defendants did not have notice of the violation.  *Amaral v. Cintas Corp.*

18 *No. 2*, 163 Cal. App. 4th 1157, 1209 (2008) ("Although common sense might suggest a

19 'subsequent' violation is nothing more than a violation that occurs at a later point in time after an

20 'initial' violation, this definition is inadequate because the statutes provide for multiple penalties

21 for 'each failure to pay each employee' incurred in an initial violation").

22     Next, the Court must determine if the violation was "willful."  "[T]he term 'willful' in its

23 ordinary use, merely means that one intentionally fails or refuses to perform an act which is

24 required to be done."  *Davis v. Morris*, 37 Cal. App. 2d 269, 274 (1940).  "Willful" as used

25 elsewhere in the Cal. Labor Code has been found to mean "that an employer has intentionally

26 failed or refused to perform an act which was required to be done."  *Amaral* 163 Cal. App. 4th at

27 1201.  "[T]he employer's refusal to pay need not be based on a deliberate evil purpose to defraud

28 workmen of wages which the employer knows to be due."  *Barnhill v. Robert Saunders & Co.*,

125 Cal. App. 3d 1, 7 (1981).  Here, Defendants improperly paid Plaintiffs on a salary basis despite clear statutory obligations to pay them hourly.  Further, Defendants did not establish evidence of a good faith dispute.  Based on the evidence and testimony at trial, the Court finds Defendants' failure to pay minimum wage to be willful.

The jury made findings regarding the number of pay stubs issued to each Plaintiff from May 22, 2011 to the present — the period of time within the statute of limitations.  Implicit in this factual determination is that Defendants paid Plaintiffs less than the minimum wage for pay periods equivalent to the number of pay stubs Defendants issued to each Plaintiff.  The Court adopts these findings and calculates the PAGA penalties for each Plaintiff as follows:

Defendants paid Joseph Cabardo less than minimum wage for six pay periods eligible for PAGA penalties.  Therefore, Defendants owe $600 in civil penalties for failure to pay Joseph Cabardo minimum wage.

Defendants paid Donnabel Suyat less than minimum wage for 17 pay periods eligible for PAGA penalties.  Therefore, Defendants owe $1,700 in civil penalties for failure to pay Donnabel Suyat minimum wage.

Defendants paid Mactabe Bibat less than minimum wage for six pay periods eligible for PAGA penalties.  Therefore, Defendants owe $600 in civil penalties for failure to pay Mactabe Bibat minimum wage.

Defendants paid Marissa Bibat less than minimum wage for 15 pay periods eligible for PAGA penalties.  Therefore, Defendants owe $1,500 in civil penalties for failure to pay Marissa Bibat minimum wage.

Defendants paid Renato Manipon less than minimum wage for 16 pay periods eligible for PAGA penalties.  Therefore, Defendants owe $1,600 in civil penalties for failure to pay Renato Manipon minimum wage.

///

///

///

///

10

1    Defendants paid Alicia Bolling less than minimum wage for six pay periods eligible for

2  PAGA penalties.  Therefore, Defendants owe $600 in civil penalties for failure to pay Alicia

3  Bolling minimum wage.[3]

4    In total, Defendants owe $6,600 in civil penalties under § 1197.1.[4]

5    *ii.*    *Civil Penalties under Cal. Lab. Code § 558*

6    Cal. Lab. Code § 558 ("§ 558") imposes civil penalties on any employer who violates "a

7  section of this chapter or any provision regulating hours and days of work in any order of the

8  Industrial Welfare Commission."  Violations under this chapter include failure to pay overtime

9  and failure to provide meal and rest breaks.  Civil penalties are levied as follows:

10
11
> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

12
13
14
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

15  Cal. Lab. Code § 558.  This language mirrors that in § 1197.1 and for the same reasons discussed

16  *supra*, the Court finds that the "initial violation" amount applies to all pay periods in question.

17  The jury found Defendants did not pay the required overtime rates and denied Plaintiffs meal and

18  rest breaks.  The Court hereby adopts those findings.  Additionally, as in the analysis of § 1197.1,

19  the number of pay stubs issued during the qualifying time period reflects the number of pay

20  periods in which these violations occurred.  Based on these factual findings by the jury,

21  Defendants owe the following civil penalty amounts for violations under § 558:

22    Defendants did not pay Joseph Cabardo overtime and denied him meal and rest breaks for

23  six pay periods eligible for PAGA penalties.  Therefore, Defendants owe $300 in civil penalties

24  for failure to pay Joseph Cabardo minimum wage.

25
26
[3]    The jury found that Carlina Cabacongan and John Dave Cabacongan were not issued pay stubs in the qualifying time period and therefore no PAGA civil penalties are imposed on their behalf.

27
28
[4]    Plaintiffs are not entitled to civil penalties under Cal. Lab. Code § 256 because this section only applies to seasonal labor.  *See* Cal. Lab. Code §§ 250–256.

11

Defendants did not pay Donnabel Suyat overtime and denied her meal and rest breaks for 17 pay periods eligible for PAGA penalties.  Therefore, Defendants owe $850 in civil penalties for failure to pay Donnabel Suyat minimum wage.

Defendants did not pay Mactabe Bibat overtime and denied him meal and rest breaks for six pay periods eligible for PAGA penalties.  Therefore, Defendants owe $300 in civil penalties for failure to pay Mactabe Bibat minimum wage.

Defendants did not pay Marissa Bibat overtime and denied her meal and rest breaks for 15 pay periods eligible for PAGA penalties.  Therefore, Defendants owe $750 in civil penalties for failure to pay Marissa Bibat minimum wage.

Defendants did not pay Renato Manipon overtime and denied him meal and rest breaks for 16 pay periods eligible for PAGA penalties.  Therefore, Defendants owe $800 in civil penalties for failure to pay Renato Manipon minimum wage.

Defendants did not pay Alicia Bolling overtime and denied her meal and rest breaks for six pay periods eligible for PAGA penalties.  Therefore, Defendants owe $300 in civil penalties for failure to pay Alicia Bolling minimum wage.

In total, Defendants owe $3,300 in civil penalties under § 558.

*iii.     Civil Penalties under Cal. Lab. Code § 210*

Civil penalties are imposed under Cal. Lab. Code § 210 ("§ 210") for failure to pay proper wages under Cal. Lab. Code. § 204 ("§ 204").  Because Defendants failed to pay Plaintiffs minimum wage and overtime premiums, they failed to pay all wages earned by Plaintiffs pursuant to § 204 and therefore are liable for civil penalties under § 210.  For violations of § 210 an employer is penalized:

> (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
>
> (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Cal. Lab. Code § 210.  The jury found Defendants knew or should have known that Plaintiffs worked overtime hours and Plaintiffs were not paid overtime premiums.  Therefore, Defendants'

failure to pay overtime was willful or intentional and the Court may impose the "subsequent violation" penalty as well as the "initial violation" penalty.

A plaintiff may recover either the statutory penalty under § 210 or enforce the civil penalty, but not both.  Here, Plaintiffs seek relief under this section pursuant to PAGA and therefore the Court will impose the civil penalty.  Accordingly, Defendants are liable for civil penalties in the following amounts:

Defendants did not pay Joseph Cabardo minimum wage or overtime premiums for six pay periods eligible for PAGA penalties and owe him $15,825.20 in wages for the PAGA period. Therefore, Defendants owe $5,056.30 in civil penalties ($100 for the first violation plus $200 x 5 for the subsequent violations plus $3,956.30 — 25 percent of $15,825.20).

Defendants did not pay Donnabel Suyat minimum wage or overtime premiums for 17 pay periods eligible for PAGA penalties and owe her $30,478.85 in wages for the PAGA period. Therefore, Defendants owe $10,919.71 in civil penalties ($100 for the first violation plus $200 x 16 for the subsequent violations plus $7,619.71 — 25 percent of $30,478.85).

Defendants did not pay Mactabe Bibat minimum wage or overtime premiums for six pay periods eligible for PAGA penalties and owe him $8,932.12 in wages for the PAGA period. Therefore, Defendants owe $3,333.03 in civil penalties ($100 for the first violation plus $200 x 5 for the subsequent violations plus $2,233.03 — 25 percent of $8,932.12).

Defendants did not pay Marissa Bibat minimum wage or overtime premiums for 15 pay periods eligible for PAGA penalties and owe her $22,097.37 in wages for the PAGA period. Therefore, Defendants owe $8,424.34 in civil penalties ($100 for the first violation plus $200 x 14 for the subsequent violations plus $5,524.34 — 25 percent of $22,097.37).

Defendants did not pay Renato Manipon minimum wage or overtime premiums for 16 pay periods eligible for PAGA penalties and owe him $18,543.98 in wages for the PAGA period. Therefore, Defendants owe $7,736.00 in civil penalties ($100 for the first violation plus $200 x 15 for the subsequent violations plus $4,636.00 — 25 percent of $18,543.98).

///

///

1    Defendants did not pay Alicia Bolling minimum wage or overtime premiums for six pay

2    periods eligible for PAGA penalties and owe her $9,220.60 in wages.  Therefore, Defendants owe

3    $3,405.15 in civil penalties ($100 for the first violation plus $200 x 5 for the subsequent

4    violations plus $2,305.15 — 25 percent of $9,220.60).

5    In total, Defendants owe $38,874.53 in civil penalties under § 210.

6                          *iv.*          *Civil Penalties under Cal. Lab. Code § 226.3*

7    Under Cal. Lab. Code § 226.3 ("§ 226.3"), an employer who fails to provide itemized

8    wages statements as specified by Cal. Lab Code § 226 is liable for civil penalties in the amount of

9    "two hundred fifty dollars ($250) per employee per violation in an initial citation and one

10   thousand dollars ($1,000) per employee for each violation in a subsequent citation."  Cal. Lab.

11   Code § 226.3.  While there was evidence at trial of a Department of Labor ("DOL") investigation,

12   that evidence did not specify if Defendants were cited for violations of § 226.  Further, that DOL

13   investigation was completed after the timeframe at issue concerning those deficient wage

14   statements presented at trial.  Based on these facts, the matter before the Court is one of an initial

15   citation and therefore, the $250 penalty per employee per violation applies.

16   On the matter of § 226.3 penalties, the jury provided an advisory verdict.  In that verdict,

17   the jury found that 123 wage statements were not accurate or itemized from May 22, 2011 to the

18   present.  The Court hereby adopts this finding.  Therefore, Defendants owe $30,750 in civil

19   penalties under § 226.3, or $250 for each of the 123 improper wage statements.

20                          *v.*          *No reduction in PAGA civil penalties*

21   Under Cal. Lab. Code § 2699(e)(2), a court may award "a lesser amount than the

22   maximum civil penalty amount…if, based on the facts and circumstances of the particular case, to

23   do otherwise would result in an award that is unjust, arbitrary, or confiscatory."  Based on the

24   evidence presented at trial, the Court does not find a basis to reduce the amount of civil penalties

25   levied against Defendants.

26   ///

27   ///

28   ///

14

B.     UCL

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – actions or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996). "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000).

Here, Plaintiffs assert an unlawful UCL violation.  Under its "unlawful" prong, "the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014) (internal citations omitted).  At trial, the jury found Defendants violated numerous California Labor Code statutes.  The California Supreme Court recognizes that "any business act or practice that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair business practice." *Cortez*, 23 Cal. 4th at 178.  Therefore, based on the evidence presented at trial and the factual findings by the jury, this Court finds that Plaintiffs have met their burden to establish Defendants violated the UCL.

///

///

///

///

///

///

///

///

1   While damages are not recoverable in a UCL action, a plaintiff may collect restitution in

2   the form of owed wages.

3   "[E]arned wages that are due and payable pursuant to section 200 et
    seq. of the Labor Code are as much the property of the employee who

4   has given his or her labor to the employer in exchange for that
    property as is property a person surrenders through an unfair business

5   practice.   An order that earned wages be paid is therefore a
    restitutionary remedy authorized by the UCL."

6

7   *Cortez*, 23 Cal. 4th at 178.  Further, meal and rest break premiums under Cal. Lab. Code § 226.7

8   are considered "a premium wage intended to compensate employees, not a penalty."  *Murphy v.*

9   *Kenneth Cole Prods.*, 40 Cal. 4th 1094, 1114 (2007).

10   A restitution claim under Business and Professions Code § 17203 has a four-year statute

11   of limitations. Cal. Bus. & Prof. Code § 17208.  "[A]n action to recover wages that might be

12   barred if brought pursuant to Labor Code section 1194 still may be pursued as a UCL action

13   seeking restitution pursuant to section 17203 if the failure to pay constitutes a business practice."

14   *Cortez*, 23 Cal. 4th at 178–79.  Therefore, Plaintiffs are entitled to an additional year of unpaid

15   wages and meal and rest break penalties from June 26, 2008 to June 26, 2009.  However, only

16   Renato Manipon and Marissa Bibat worked for Defendants during that time.

17   The jury found that, on average, Renato Manipon and Marissa Bibat worked 13 hours per

18   weekday, four days per week and 17 hours per weekend day, two days per week.  The jury found

19   that Renato Manipon and Marissa Bibat were only paid $3.67 per hour they worked, and

20   Defendants did not permit Plaintiffs to take meal or rest breaks.  Further, the jury found that both

21   Renato Manipon and Marissa Bibat worked for the entire year in question. The jury's findings are

22   well supported by the evidence presented at trial.  Therefore, while the Court recognizes it is not

23   required to adopt these findings for the time period at issue, the Court finds that the jury's

24   findings are reasonable in light of the evidence and adopts them for the period of June 26, 2008 to

25   June 26, 2009.

26   Therefore, Renato Manipon and Marissa Bibat are each entitled to the following

27   restitution: $9,006.40 in regular wages; $20,358.52 in overtime wages; $8,976.24 in double-time

28   wages; $2,496 in meal period premiums; and $2,496 in rest period premiums.

16

1    Further, Renato Manipon and Marissa Bibat are entitled to seven percent interest per

2    annum on this amount.  *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 375 (2017)

3    (finding "prejudgment interest on UCL claims was a form of restitution necessary to fully

4    compensate plaintiffs" and imposing a seven percent interest rate in accordance with article XV,

5    section 1 of the California Constitution was not an abuse of discretion).

6    **III.    CONCLUSION**

7    For the foregoing reasons, Defendants are liable for $79,524.53 in PAGA civil penalties,

8    $43,333.16 plus seven percent interest in restitution pursuant to the UCL to Marissa Bibat, and

9    $43,333.16 plus seven percent interest in restitution to Renato Manipon.

10   The parties shall meet and confer as soon as practicable and shall provide the Court with a

11   Proposed Judgment consistent with these findings, the jury verdicts, and the Court's April 29,

12   2016 summary judgment order to be filed within 14 days of entry of this Findings of Fact and

13   Conclusions of Law.

14   IT IS SO ORDERED.

15   DATED:  May 12, 2020

16

17

18   Troy L. Nunley
     United States District Judge

19

20

21

22

23

24

25

26

27

28

17